# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **RANDALL DEE MURPHY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **5:25-cv-636-EGL** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| ***Commissioner of Social Security,*** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Randall Murphy seeks judicial review of the Commissioner of Social Security's denial of his application for disability insurance benefits. Murphy argues that substantial evidence does not support the Administrative Law Judge's (ALJ) decision, and that the ALJ failed to apply the proper legal standard for evaluating medical opinions, his subjective pain testimony, and his need for an assistive device. After careful review of the administrative record and the parties' briefs, the Court **AFFIRMS** the Commissioner's decision.

## BACKGROUND

### A. Procedural Background

In July 2020, Murphy filed a claim for disability insurance benefits, alleging he became disabled on November 7, 2018. Doc. 10-5 at 5. After his claim was denied initially and upon reconsideration, Murphy filed a request for a hearing. Doc. 10-2

at 16. The ALJ found Murphy was not disabled under sections 216(i) and 223(d) of the Social Security Act, *id.* at 25-26, and the Appeals Council denied Murphy's request for review, *id.* at 2.

Murphy sought judicial review, and this Court remanded the case upon the Commissioner's unopposed motion for entry of judgment with remand. Doc. 10-11 at 30-31. On remand, the ALJ again denied Murphy's claim. Doc. 10-10 at 17-30. The Appeals Council denied Murphy's written exceptions, *id.* at 2-4, rendering the ALJ's decision final, *See* 20 C.F.R. § 404.984(b)(2). Murphy exhausted his administrative remedies and timely filed this action. The Court therefore has jurisdiction under 42 U.S.C. § 405(g).

## B. Factual Background

Murphy alleges that his disability began on November 7, 2018, due to a history of cervical fusion, degenerative disc disease, HIV, diabetes, and chronic pain. Doc. 10-6 at 3. Murphy has a college education and has past relevant work as a school principal, educational specialist, stores laborer, and assistant principal. *Id.* at 4; Doc. 10-10 at 29. He was 53 years old on the alleged onset date. Doc. 10-5 at 5.

**ALJ DECISION**

Upon remand, the ALJ held a hearing and updated the medical record, reevaluated Murphy's residual functional capacity, and evaluated Murphy's subjective symptom allegations. Doc. 10-10 at 17.

To determine whether a claimant is disabled, an ALJ applies a five-step sequential evaluation process. The ALJ must assess whether the claimant (1) is currently engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals the severity of a listed impairment; (4) can perform any past relevant work; and, if not, (5) can adjust to other work that exists in significant numbers in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

At step one, the ALJ found that Murphy had not engaged in substantial gainful activity since November 7, 2018, the alleged disability onset date. Doc. 10-10 at 20. At step two, the ALJ determined that Murphy had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, diabetes mellitus 2, diabetic neuropathy, and obesity. *Id.* at 21. The ALJ concluded at step three that none of Murphy's impairments, alone or in combination, met or medically equaled a listed impairment. *Id.* at 22-23.

Before step four, the ALJ must determine a claimant's residual functional capacity (RFC) which is an assessment of the claimant's ability to do physical and

3

mental work activities on a sustained basis despite limitations from his relevant impairments. *See* 20 CFR § 404.1545(a). Here, the ALJ considered the entire record and found that Murphy has the RFC to perform a full range of sedentary work, except that he could occasionally perform postural maneuvers, and he should not climb ropes, ladders, or scaffolds. Doc. 10-10 at 23-29. She also concluded that Murphy should avoid overhead reaching with his bilaterial upper extremities; concentrated exposure to non-weather-related hot and cold temperature extremes; extreme humidity; concentrated vibration; dangerous, moving, unguarded machinery; unprotected heights; and commercial driving. *Id.* at 23. At step four, the ALJ found that Murphy could perform his past relevant work as an educational specialist because the requirements of that work did not exceed his RFC, noting that he could not perform it as he performed it in the past, but could perform it as generally performed in the national economy. *Id.* at 29-30.

Based on these findings, the ALJ concluded that from November 7, 2018, through October 25, 2023, Murphy had not been disabled as defined in the Social Security Act. *Id.* at 30.

## STANDARD OF REVIEW

Judicial review under the Social Security Act is narrow. The Court asks only whether the Commissioner's decision is supported by substantial evidence and rests on the correct legal standards. *Winschel*, 631 F.3d at 1178.

"[W]hatever the meaning of 'substantial' in other contexts," in the context of judicial review of social security decisions, the threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence exists where there is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). If that standard is met, the Court must affirm, "[e]ven if the evidence preponderates *against* the Commissioner's findings." *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

## DISCUSSION

Murphy asks the Court to remand his case based on the ALJ's alleged failure to support her RFC determination with substantial evidence. Doc. 14 at 7. Specifically, Murphy contends the ALJ (1) did not properly evaluate the medical opinion evidence and prior administrative findings; (2) did not properly analyze Murphy's subjective symptom statements; and (3) did not properly account for the "medical necessity" of Murphy's assistive device. *See id.*; Doc. 15 at 5.

A claimant's RFC is the most he can do despite his limitations and is assessed based on "all the relevant evidence" in the case record, including medical evidence and opinions, as well as a claimant's statement of his symptoms. 20 C.F.R. § 404.1545(a)(1), (3). "[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors," *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010), and that determination is left to the ALJ's discretion, so long as the holding is supported by substantial evidence, *see Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008). This Court's review of an ALJ's RFC determination is limited in scope, and the Court will not reweigh the evidence or substitute its own judgment. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

Here, after thoroughly evaluating the entire record as well as Murphy's own statements, the ALJ found Murphy has the RFC to perform a sedentary range of work, with certain limitations, based on "evidence that [Murphy] has recovered well following his neck surgeries, and generally exhibits normal motor strength, sensation, and tone in spite of continued pain and limited range of motion in his neck as a result of multiple cervical fusions and removal of hardware." Doc. 10-10 at 29. The limit to sedentary work is based on Murphy's lumbar disc herniation, which the ALJ found "contribut[es] to some weakness and loss of sensation in the lower left extremity." *Id.* The "sedentary" classification is the "lowest physical exertion

requirement that an ALJ can assess in making a disability determination." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1273 (11th Cir. 2024). The Court finds that this determination is supported by substantial evidence, and Murphy's arguments fail to show otherwise. The ALJ properly evaluated the medical opinions and explained her findings, properly accounted for Murphy's subjective complaints of pain, and did not err in determining the RFC without reference to Murphy's alleged need for a cane.

 1. Medical Opinions and Administrative Agency Findings

Murphy claims that the ALJ improperly found Dr. Traynor's and Dr. Ekambaram's[1]  medical opinions unpersuasive, but he fails to make any specific argument as to how the ALJ's analysis was flawed.  Doc. 14 at 15-17. An ALJ follows a specific procedure to evaluate the medical opinions in the record. *See* 20 C.F.R. § 404.1520c. Murphy's brief does not contain any actual challenge to the ALJ's analysis, he merely argues that she was wrong to find the opinions unpersuasive. *See* Doc. 14 at 15-17. Even though Murphy failed to develop his argument, the Court has considered the ALJ's analysis and finds that she properly considered and found unpersuasive the medical opinions of Dr. Traynor and Dr. Ekambaram.

---

[1] In her decision, the ALJ spells the name "Ekambaram," Doc. 10-10 at 28, while Murphy spells it "Ekambararn," Doc. 14 at 15; the Commissioner, on the other hand, opts for "Ekambaran" and "Ekambaram" variously, Doc. 15 at 10. The Court chooses "Ekambaram."

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," but instead must determine the persuasiveness of the opinion by considering multiple factors. 20 C.F.R. § 404.1520c(a)[2]; *see Ohneck v. Comm'r, Soc. Sec. Admin.*, No. 22-13984, 2023 WL 8946613, at *2 (11th Cir. Dec. 28, 2023). An ALJ must consider and explain "the most important factors," supportability and consistency, and may also consider and explain other relevant factors, including the length of the treatment relationship, the extent of the relationship, and the doctor's specialization. *See* 20 C.F.R. § 404.1520c(b)-(c). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source" to support his opinion. *Id.* at § 404.1520c(c)(1). Consistency looks to the extent the medical opinion is consistent "with the evidence from other medical sources and nonmedical sources." *Id.* at § 404.1520c(c)(2). Here, the ALJ properly articulated that the opinions of Dr. Traynor and Dr. Ekambaram were not persuasive because their opinions were not supported by the objective medical evidence and were inconsistent with the other record evidence. Doc. 10-10 at 25-26, 28.

Dr. Traynor first treated Murphy on January 28, 2021, and observed "mildly antalgic gait and station" and "decreased grip strength." Doc. 10-9 at 3-4. On March

---

[2] "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he] ha[s] one or more impairment-related limitations" in certain abilities. 20 C.F.R. § 404.1513.

2, 2021, Dr. Traynor completed another exam and noted Murphy's "normal gait and station." *Id.* at 8.[3] After these two visits, Dr. Traynor completed a "Physical Capacities Evaluation," opining (among other observations) that Murphy can lift five pounds occasionally, can sit for 2-3 hours during an 8-hour work day, can stand/walk for less than one hour during an eight hour work day, and that Murphy does not require an assistive device to ambulate even minimally in a normal workday. Doc. 10-8 at 76-78.

The ALJ found that Dr. Traynor's opinion was not "supported" because it was offered after only two visits, one which resulted in Dr. Traynor noting "normal" findings. Doc. 10-10 at 26. The "opinion" offered by Dr. Traynor is a check-the-box form and fill-in questionnaire that contains little to no medical evaluation or analysis supporting Dr. Traynor's opinion therein. *See* Doc. 10-8 at 76-78. But even looking beyond the forms, there is no explanation for how Dr. Traynor came to these proposed limitations when his opinion was based on only two visits and, at one of those visits, he noted mostly normal findings. The ALJ's consideration of the "supportability" factor is properly articulated and is based on substantial evidence.

As to consistency, the ALJ found that Dr. Traynor's opinion regarding Murphy's limitations, *see* Doc. 10-8 at 76-78, was not consistent with other record

---

[3] Dr. Traynor treated Murphy multiple times after completing the "opinion" form. *See* Doc. 10-9 at 11, Doc. 10-17 at 2-10.

medical evidence noting normal physical findings, *see* Doc. 10-7 at 76, 84-85, 89, 91-92, or with the opinion of Murphy's orthopedic surgeon that physical therapy would allow Murphy to return to his prior level of functioning, *see* Doc. 10-8 at 126-128. Based on the lack of supportability and consistency, the ALJ found that Dr. Traynor's opinion was not persuasive. Doc. 10-10 at 26. The ALJ "articulate[d] a specific justification for his decision" about the persuasiveness of Dr. Traynor's medical opinion, and thus the Court "will not second guess" that determination. *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020).

Dr. Ekambaram conducted a consultative medical examination in August 2022 and observed normal reflexes, coordination of movement, and joint sense, but noted that Murphy had trembling in both hands if he raised his arms above 90 degrees. *See* Doc. 10-15 at 43. He observed Murphy's "moderate hand grip and dexterity," but noted that Murphy "[was] walking very slowly due to the lumbar disc pain." *Id.* at 45. Dr. Ekambaram opined that Murphy could hardly do any type of job and required an assistive device (cane) "all the time." *Id.* at 44. Dr. Ekambaram did not explain his reasons for finding severe limitations after he noted normal findings as to most of Murphy's movements, *id.* at 42-48, and the ALJ therefore found that Dr. Ekambaram's opinion was not fully supported, Doc. 10-10 at 28. As to consistency, Dr. Ekambaram's opinion of Murphy's physical limitations was not consistent with medical records showing full range of motion in all extremities, *see*

10

Doc. 10-15 at 21-22; Doc. 10-16 at 5, and his opinion on the necessity of a cane was not consistent with medical records showing normal gait and pain relief. *See* Doc. 10-7 at 72-76, 84-85, 91-92, 97-98; Doc. 10-16 at 2-5, 8-11, 14-17, 42. The ALJ properly articulated her supportability and consistency findings, and those findings are supported by substantial evidence shown in the record cites above.

Murphy argues that the ALJ was not allowed to acknowledge normal and abnormal findings and then rely on the normal findings to find a medical opinion unpersuasive. Doc. 14 at 15-17. But that is exactly what the ALJ is supposed to do in evaluating consistency—and here, the ALJ reasonably weighed medical opinions against others, showed her work, and then found certain opinions unpersuasive. Because Murphy "has failed to show that the ALJ's supportability and consistency determinations are not supported by substantial evidence, and because this Court cannot substitute its judgment for the ALJ's judgment or reweigh the evidence, the ALJ's evaluation of [the doctors'] opinions must stand." *Elshater v. Kijakazi*, No. 22-cv-60466, 2022 WL 14890164, at *8 (S.D. Fla. Oct. 6, 2022), *report and recommendation adopted*, 2022 WL 14813795 (S.D. Fla. Oct. 26, 2022).

As previously noted, Murphy does not provide specific arguments regarding the ALJ's persuasiveness evaluation. Rather, he seems to contend generally that after Dr. Traynor and Dr. Ekambaram opined that Murphy had certain limitations, any opinion by the ALJ to the contrary was improper. Doc. 14 at 16-17. But that

11

argument is meritless, as the regulations clearly state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c. An ALJ is "not required to mirror the findings or opinions of any particular medical source," *Wimberly v. Kijakazi*, No. 1:20-cv-773, 2023 WL 5747330, at *3 (M.D. Ala. Sept. 6, 2023) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)), and "may reject the opinion of any physician when evidence supports a contrary conclusion," *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ examined the medical opinions in light of the record and found those opinions unpersuasive. Since that finding is supported by substantial evidence, the ALJ did not err in finding that Murphy has the RFC to complete sedentary work, even though that RFC was contrary to the opinions of Dr. Traynor and Dr. Ekambaram. Murphy's RFC "is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012).

Murphy challenges the ALJ's treatment of the findings of two state agency medical consultants—Dr. Sellman and Dr. Parker. Doc. 14 at 13-14. In line with the procedure outlined above, the ALJ considered these medical opinions and found them "partially persuasive" and "mostly consistent," which affected the ALJ's overall RFC determination. Doc. 10-10 at 29. Murphy takes issue with the ALJ's

persuasiveness finding because "(1) the State Agency findings long predate the ALJ's decision and do not consider a significant portion of the record; and (2) they are entirely conclusory, unexplained findings." Doc. 14 at 13. But again, Murphy makes no specific argument as to why the ALJ's supportability and consistency evaluations were flawed, and where the ALJ did her analysis and there was substantial evidentiary support, the Court will not disturb that decision.

Dr. Sellman opined that Murphy could perform light work with some limitations. Doc. 10-3 at 25-37. She supported this opinion with a review of relevant medical records, notes from a physical exam, and additional explanation. *Id.* Upon reconsideration, Dr. Parker reviewed the evidence and opined that Murphy could perform light work with certain limitations. *Id.* at 39-55. The ALJ found that these opinions were supported by the doctors' examination notes and other findings. Doc. 10-10 at 29. Murphy's argument that the findings are conclusory and unexplained has no merit where a review of the record shows that both doctors considered numerous medical records and explained the reasons for their findings. *See* Doc. 10-3 at 25-37; 39-55. As to consistency, the ALJ found the opinions mostly consistent with record evidence showing normal physical findings, but found the opinions not entirely consistent based on later provided evidence of Murphy's disc disease causing antalgic gait and some decrease in sensation. Doc. 10-10 at 29. While Murphy contends that the ALJ's finding of partial persuasiveness was flawed

13

because the agency medical consultation predates record evidence, the ALJ explicitly notes that the opinions are not entirely consistent with "[l]ater provided evidence," *id.*, and the ALJ accordingly found that Murphy was more limited than the state consultants opined, *id.* (finding sedentary RFC instead of "light" recommended by state agency consultants). The ALJ properly evaluated the medical opinions and determined the persuasiveness considering the required factors, *see id.*; 20 C.F.R. § 404.1520c, and "again, the court cannot reweigh the evidence or substitute its judgment for that of the ALJ when [her] decision to reject a medical opinion is supported by substantial evidence," *see Hargett v. Soc. Sec. Admin, Comm'r*, No. 5:20-cv-78, 2020 WL 5797944, at *4. (N.D. Ala. Sept. 29, 2020) (citing *Bloodsworth*, 703 F.2d at 1240).

Murphy's challenge to the ALJ's analysis of medical opinions is not actually a challenge to the ALJ's decision but is a request for this Court to reweigh the evidence and make its own determination as to the persuasiveness of certain records. But that is not the Court's role, and where the ALJ properly evaluated medical opinions and that determination is supported by substantial evidence, the Court will not find error. *See Hand v. Soc. Sec. Admin., Comm'r*, 786 F. App'x 220, 224-26 (11th Cir. 2019) (finding that the ALJ did not err in its treatment of medical opinions where she "explained with particularity the weight she gave to each opinion … and substantial evidence supports the weight she gave them").

14

2. Subjective Symptom Finding

When a claimant seeks to establish disability through his own testimony about pain or other subjective symptoms, the Eleventh Circuit's multi-step "pain standard" applies to review of his claim. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The claimant must show (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain resulting from the condition, or (3) that the objectively determined medical condition could reasonably be expected to produce the alleged symptoms. *Id.*; *see also Raper*, 89 F.4th at 1277; 20 C.F.R. § 404.1529.

Once that threshold is met, the ALJ must evaluate the claimant's statements about the intensity, persistence, and limiting effects of his symptoms and assess those statements against the objective medical evidence and the record as a whole. 20 C.F.R. § 404.1529(c)(4); *see also Raper*, 89 F.4th at 1277. In doing so, the ALJ considers the claimant's daily activities; the frequency and intensity of the claimant's pain; precipitating and aggravating factors; the type, dosage, and effects of medications; any treatments other than medication; any measures used to relieve pain; and any other relevant factors. 20 C.F.R. § 404.1529(c)(3).

If the ALJ finds a claimant's subjective testimony not fully credible, the ALJ must articulate explicit and adequate reasons for that determination. *Wilson*, 284 F.3d at 1225. A clearly articulated credibility finding supported by substantial

evidence will not be disturbed on review. *See Raper*, 89 F.4th at 1277; *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

Here, the ALJ applied that standard and found that although Murphy had medically determinable impairments that could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects were inconsistent with the medical evidence and other evidence in the record as a whole. Doc. 10-10 at 24. Substantial evidence supports that finding.

The ALJ's decision shows that she considered Murphy's responses to questionnaires and his testimony at the hearing. *See id.* She noted Murphy's allegation that his neck pain radiates into his arms and is controlled only partially by medication, causing difficulty sleeping, bathing, and dressing. *See* Doc. 10-6 at 17-18, 27-33. Murphy alleged that he could prepare meals that take no longer than twenty minutes but could not lift a pot weighing more than five pounds, *id.* at 29; however, he is able to drive and shop for groceries, *id.* at 30. The ALJ also acknowledged Murphy's testimony in April 2021 that he can sit for one to two hours at a time and walk less than 30 minutes, is unable to turn his neck side to side, cannot lift or pull, and needs assistance with grocery shopping. Doc. 10-2 at 42-45. She noted that two years later, at a hearing on July 13, 2023, Murphy alleged numbness in his feet that had caused numerous falls, the need for a cane for any walking, and limitations on driving due to pain. *See* Doc. 10-10 at 48-50.

16

Murphy argues that the ALJ "failed to acknowledge or discuss that his pain was so intense that it 'changed [his] life to the point that [he] can no longer function as a human being.'" Doc. 14 at 17 (quoting Doc. 10-6 at 18). But as shown above, the ALJ explicitly considered Murphy's statements and testimony, *see* Doc. 10-10 at 24, and she was not required "specifically refer" to each allegation, *see Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

After acknowledging Murphy's allegations of pain and limitations, the ALJ considered the objective medical evidence, medical opinions, and other evidence in the record. *See* Doc. 10-10 at 24-29. Six weeks after a posterior cervical fusion surgery, Dr. Seymour noted that Murphy was "not having much pain," Doc. 10-8 at 23, and in May 2020, that Murphy had "minimal complaints," *id.* at 25. In August 2020 at another follow up, Dr. Seymour recorded a normal physical exam, good recovery from surgery, and noted that Murphy has some pinching type sensations but overall improvement. *Id.* at 63. In February 2021, one month after his posterior cervical hardware removal, Dr. Seymour noted that Murphy was having "some muscle issues," but doing great "for the most part." *Id.* at 96. The ALJ found that Murphy's symptom allegations were inconsistent with his orthopedic surgeon's post-op notes documenting no functional limitations and overall good recovery. *See* Doc. 10-10 at 26-29.

The ALJ also compared specific allegations by Murphy with general clinic notes entered by Dr. Claudia Taramona-Espinoza after multiple exams. *See id.* at 25. Murphy reported recent neck surgery, an inability to lift more than twenty pounds, and the need for another neck surgery, but Dr. Taramona-Espinoza consistently documented normal physical examinations and no physical abnormalities. *See* Doc. 10-7 at 72-75, 84, 91-92, 97-98.

Murphy receives pain management treatment from Dr. Roddie Gantt and CRNP Ashley Tomlin. Doc. 10-10 at 26. He consistently reported up to eighty-percent pain relief following nerve blocks, injections, and other pain management techniques, *see* Doc. 10-16 at 2, 8, 14, and at one point stated he could perform his activities of daily living and chores, *id.* at 31. In May 2023, Murphy reported numerous falls, but still said he had eighty percent pain relief from previous injections. *Id.* at 2. The clinic examination notes consistently reflected normal gait and mobility. *Id.* at 5, 11, 17, 42.

At a neurology consult, Murphy exhibited a "cautious gait with an assistive device," but had normal posture and was able to walk heel to toe; further, Dr. Banks stated that the MRI showed no abnormality warranting surgery. *See* Doc. 10-15 at 22-23.

Murphy's main contention is that the ALJ's analysis of his subjective symptoms was "doomed from the beginning" based on her flawed analysis of the

medical opinions. Doc. 14 at 19. But, as noted above, the ALJ properly considered and found unpersuasive Dr. Traynor's and Dr. Ekambaram's medical opinions, *see supra* 7-12, therefore, no error results from the ALJ's lack of a comparison between Murphy's symptoms and those discounted opinions. The overall record, as noted by the ALJ, shows overall normal gait and range of motion and reflects pain relief from nerve blocks, injections, and medication. After discussing this evidence in great detail, the ALJ identified the inconsistencies within Murphy's statements. Doc. 10-10 at 28. Murphy's alleged limitations on his physical mobility were inconsistent with the noted findings of normal strength, gait, and range of motion. *Id.* And, Murphy's statements of constant pain were contradicted by his regular reports of pain relief from pain management techniques. *Id.*

The ALJ "considered [Murphy's] subjective complaints with the record as a whole and adequately explained [her] decision not to fully credit [Murphy's] alleged limitations on his ability to work." *See Raper*, 89 F.4th at 1279. Murphy disagrees with the ALJ's decision to discount his testimony, but the question is not whether the ALJ "could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). Because the ALJ considered Murphy's subjective statements in light of all the relevant evidence, articulated specific reasons for discounting his

19

allegations, and grounded those reasons in substantial evidence, Murphy has shown no error warranting remand.

### 3. Assistive Device

In a heading of his brief, Murphy states that the "ALJ's RFC finding is not reasonably supported by the record" due to the "medical necessity of his assistive device." Doc. 14 at 1, 7. Beyond his explanation of when an ALJ should consider a claimant's need for a cane, Murphy does not support his argument at all. *See id.* at 9. Murphy fails to cite any evidence that suggests that he did require a cane to ambulate, other than the medical opinions and subjective symptom evidence that was properly rejected by the ALJ. *See id.* at 7, 17-19; *supra* 7-12. His argument thus fails.

Even aside from Murphy's failure to present his argument, there is no indication that the ALJ was required to consider Murphy's need for a cane in determining his RFC because Murphy failed to establish the medical necessity of an assistive device. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need," SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996), and "[w]ithout medical documentation establishing the need and describing the conditions for which an assistive device is required, an ALJ is not required to include the use of an assistive device in the claimant's RFC analysis." *K.C. v. Comm'r of Soc. Sec.*, No. 1:10-cv-181, 2021 WL 7906867, at *4

20

(M.D. Ga. Mar. 23, 2021). Murphy failed to direct the Court to any medical documentation establishing the need for a hand-held device, aside from Dr. Ekambaram's opinion, which the ALJ properly rejected as unpersuasive. *See supra* 10-11. Further, upon review, the Court finds substantial evidence supports the ALJ's lack of consideration of a cane in determining Murphy's RFC. *See Ray v. O'Malley*, No. 23-cv-41, 2024 WL 1218564, at *5 (S.D. Ala. Mar. 21, 2024). The medical evidence shows reports of normal physical exams and normal gait, *see* Doc. 10-7 at 72-76, 84-85, 91-92, 97-99; Doc. 10-16 at 5, 11, 17, 23, 33, 42, 49, positive recovery after surgery, *see* Doc. 10-8 at 23, 25, 63, 96, 126-28, and up to eighty-percent pain relief in response to pain management techniques, *see* Doc. 10-16 at 2, 8, 14. Murphy's purported need for a cane is inconsistent with these medical reports. Even despite the lack of medical necessity, the ALJ specifically considered and rejected Murphy's need for a cane in her RFC determination, *see* Doc. 10-10 at 28, and the Court finds substantial evidence supports the ALJ's decision not to include the need for an assistive device in the RFC. *See Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 778 (11th Cir. 2016).

21

## CONCLUSION

The ALJ determined Murphy's RFC after thoroughly evaluating the medical evidence. The Court's role is to ensure the ALJ applied the correct legal standards and reached a conclusion supported by substantial evidence. For the reasons discussed above, the Court finds that, through the correct application of the relevant standards, the ALJ's decision is supported by substantial evidence. Thus, the Court **AFFIRMS** the Commissioner's decision.

**DONE** and **ORDERED** this 14th day of July, 2026.

EDMUND G. LACOUR JR.
UNITED STATES DISTRICT JUDGE

22